72 F.3d 130
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 ROOTS CONTRACTING AND TRADING CO., Plaintiff-Appellant,
v.
CREIGHTON LTD, Foster & Creighton CO., Wilbur F. Creighton
III, Ralph N. Blakeman, Frank W. Blair III, W.G. Bowers,
John T. Bourland, Albert R, Christian, Wilbur F. Creighton
Jr., Penelope Creighton-Dewell, H.F. Gambill, David S.
Heath, Charles D. Hutsell, W.E. Haswell, Houvis & Co., Paul
A. Krambeck Sr., Frank N. Livesay III, E. Paul McLendon,
Billy Joe Price, H. Roy Slaymaker, Anderson Spickard, Susan
M. Spickard, Amelia S. Watson, Elizabeth S. Wildman, T.H.
Whitworth, Grayward Co., Nabell Helou, Dudley Phillips, and
James Campbell, Defendants-Appellees.
 No. 94-5752.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1995.
 
 Before: KRUPANSKY, BOGGS, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant Roots Contracting and Trading Company ("Roots") has challenged the district court's dismissal of its diversity suit as a discovery sanction for failure to produce its Chairman of the Board and managing agent, Abdullah Hamad Al-Attiyah, for a duly noticed deposition in Nashville, Tennessee, in defiance of a court order.
 
 
 2
 This litigation resulted from a joint venture's failed attempt to construct a government-sponsored hospital in the Persian Gulf emirate of Qatar. The plaintiff, a Qatari limited liability company with its principal place of business in Doha, Qatar, had entered a contract in 1982 with defendant Creighton Ltd., a Cayman Islands corporation headquartered in Nashville, whereby Creighton Ltd. agreed to act as the general contractor on the construction project for which Roots agreed to provide bonding, capital, and "sponsorship." Under Qatari law, a foreign corporation such as Creighton Ltd. required a Qatari "sponsor" that shares in all profits which may be generated by the enterprise as a condition precedent to conducting business in that nation. The government of Qatar terminated its construction contract with the Roots/Creighton joint venture in November 1986, citing alleged deficiencies in the quality and timeliness of work performed or supervised by Creighton Ltd. on behalf of the joint venture. Roots subsequently sued Creighton Ltd. and others for alleged breach of fiduciary duty, fraud and deceit, dissolution of the joint venture, and breach of contract, which complaint sought damages, injunctive relief, a dissolution of the partnership, and an accounting. Each defendant denied any liability to the plaintiff.
 
 
 3
 In early 1991, near the end of the court-ordered discovery period, two defendants (who had not previously conducted discovery), Foster & Creighton and Wilbur F. Creighton III, noticed the deposition of Al-Attiyah, who they alleged to own an equitable interest in Roots and to be the Chairman of its Board of Directors. Al-Attiyah at that time served as the Chief of the Cabinet of the Minister of the Interior of Qatar. The Persian Gulf War was in progress, making travel from that region difficult and dangerous. Moreover, the plaintiff asserted, Al-Attiyah's official responsibilities rendered his travel to the United States for personal business reasons problematic. Roots has averred, via affidavits in opposition to the defendants' motions to compel discovery, that Al-Attiyah's role in the company was that of a passive minority shareholder who performed no managerial functions for, maintained no office at, drew no salary from, and knew nothing about the business operations of, the plaintiff. Moreover, Roots has alleged that all information within the knowledge of Al-Attiyah concerning the business operations of Roots generally, or the hospital project specifically, was also known by the plaintiff's alleged general manager, Robert Harmoush,[1] who ultimately was deposed on three separate occasions in this case.
 
 
 4
 The defendants have countered with evidence that supports an inference that Al-Attiyah may have had an active role in the management of Roots and may possess material information about the hospital project and about the allegations charged in the plaintiff's complaint. Indeed, certain affidavits proffered and allegations advanced by the defendants support the inference that Al-Attiyah was a policy maker and an operational factor in the plaintiff limited liability company. Accordingly, the defendants should be permitted to examine him personally to determine the scope of his role and authority within the plaintiff company, and his knowledge of the transactions at issue, rather than being compelled to rely upon hearsay recitations of other witnesses regarding his relationship with the plaintiff company.
 
 
 5
 Initially, upon Roots's March 5, 1991 motion for a protective order, a magistrate judge on March 20, 1991 ordered the postponement of Al-Attiyah's deposition pending the completion of a deposition of Harmoush. Following the Harmoush deposition, Al-Attiyah and Roots's attorneys failed to appear for a deposition duly noticed for June 20, 1991 in Nashville. Subsequently, Roots again moved for a protective order, which the district court denied on September 30, 1991. On October 2, 1991, the trial court ordered that the plaintiff would be required, at its expense, to bring Al-Attiyah to Nashville for a deposition. On November 1, 1991, Roots initiated a third protective order motion, which the magistrate denied. Moreover, the magistrate commanded that depositions of Al-Attiyah, Harmoush, and Darwish should proceed on December 9, 10, and 11, 1991. The plaintiff produced Harmoush and Darwish for deposition on the designated dates, but failed to produce Al-Attiyah.
 
 
 6
 On January 23, 1992, the defendants moved for discovery sanctions against Roots. In opposition, Roots offered evidence that it had attempted to persuade Al-Attiyah to appear for a deposition in Nashville but that his superior, the Qatari Minister of the Interior, refused to permit his absence from Qatar. In his Report and Recommendation entered May 28, 1992 (which addressed several pending motions), the magistrate, in considering the motion for sanctions, noted Roots's proffered "proof" that Al-Attiyah was denied permission to leave Qatar for ten days to complete his deposition in Nashville, and advised that, although dismissal would be inappropriate because neither Roots nor its counsel had acted with willful bad faith, the lesser sanction of barring the plaintiff from offering the testimony of Al-Attiyah at trial should be imposed because Roots had neglected to move for a protective order prior to ignoring the court ordered deposition date. The district court adopted this Report and Recommendation in its entirety respecting the sanctions issue on August 26, 1992. J.App. at 282, 319.
 
 
 7
 Almost one year later, and after the close of discovery, defendants Foster & Creighton and Wilbur F. Creighton III again sought to depose Al-Attiyah. By that time, Al-Attiyah had achieved the post of Qatari Minister of Energy and Industry. In a Scheduling Order issued on August 9, 1993, the district court granted the defendants until August 16, 1993 to move for an order to compel Al-Attiyah's deposition in Nashville. Pursuant to a timely motion, the trial court ordered on October 19, 1993 [which Order was docketed on October 20, 1993] that Al-Attiyah appear for deposition in Nashville, and that his failure to appear could result in dismissal of the case. Id. at 372-73.
 
 
 8
 Foster & Creighton and Wilbur F. Creighton III noticed Al-Attiyah's deposition for December 10, 1993. Counsel for Roots advised lawyers for the noticing defendants on December 6, 1993 that Al-Attiyah would not attend the deposition in Nashville because of time constraints imposed by his official duties, which were aggravated by his recent election to serve as President of the Organization of Petroleum Exporting Countries (OPEC). Roots's counsel represented that Al-Attiyah would instead be willing to submit to a deposition in Qatar, a telephonic deposition, or a deposition upon written interrogatories. On December 7, 1993, Roots moved for a protective order, and on January 10, 1994, all defendants joined in a cross-motion for sanctions which sought dismissal of the complaint. Roots's attorneys repeated their efforts to convince Al-Attiyah to journey to Nashville for deposition, and reiterated that he possessed little, if any, material information relevant to the case in controversy. On the other hand, the defendants proffered additional evidence which supported their allegations that Al-Attiyah was a director of Roots who occupied an active management position in the business affairs of the plaintiff and was personally involved in the hospital project.
 
 
 9
 Al-Attiyah did not appear for the duly noticed deposition in Nashville. On March 29, 1994, the district court granted the defendants' motion to dismiss the complaint for the plaintiff's failure to obey its October 19, 1993 discovery order. That dismissal order of March 29, 1994 [docketed on April 4, 1994] pronounced in its substantive entirety:
 
 
 10
 Pending before the Court is Defendants' Motion to Impose Sanctions and Dismiss this Action (Doc. No. 367). The Court GRANTS defendants' motion. This Court granted defendants' motion to compel the deposition of Abdullah Al-Attiyah, the Chairman and Managing Agent of Roots Contracting & Trading Company. (Order, October 19, 1993.) Mr. Al-Attiyah did not appear for his deposition in Nashville, Tennessee on December 10, 1993. Plaintiff has failed to obey this Court's order. Accordingly, pursuant to Federal Rule of Civil Procedure 37, the Court DISMISSES this action. Id. at 62.
 
 
 11
 Under Federal Rule of Civil Procedure 37(b)(2)(C), a court may order the dismissal of an action, or any part thereof, as a sanction for, inter alia, the refusal of an officer, director, or managing agent of a party "to obey an order to provide or permit discovery[.]" "It is well-established ... that district court dismissal orders under this rule are reviewable only for abuse of discretion." Regional Refuse Systems v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988). Generally,
 
 
 12
 [d]ismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault. Id. at 153-54, citing Patton v. Aerojet Ordnance Co., 765 F.2d 604, 607 (6th Cir.1985).
 
 
 13
 In assessing the merits of a motion for dismissal as a discovery sanction, relevant questions include:
 
 
 14
 whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery [citation]; whether the dismissed party was warned that failure to cooperate could lead to dismissal [citation]; and whether less drastic sanctions were imposed or considered before dismissal was ordered [citation]. Regional Refuse, 842 F.2d at 155.
 
 
 15
 In Patton v. Aerojet Ordnance Co., 765 F.2d 604 (6th Cir.1985), this circuit reversed the dismissal of a case for discovery violations because the district court had neglected to state its precise reasons for so ordering, which failure included the absence of findings as to the dismissed party's willfulness, bad faith, or fault.[2] Id. at 607-10. The Patton court, adopting the rationale of Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3rd Cir.1982), ruled:
 
 
 16
 We will follow the wise course of the Third Circuit and require under our supervisory authority that a dismissal of a complaint with prejudice as a sanction for failure to cooperate in discovery must be "accompanied by some articulation on the record of the court's resolution of the factual, legal, and discretionary issues presented." Patton, 765 F.2d at 608.
 
 
 17
 In the case at bench, the district court articulated no findings of facts that supported its order dismissing Roots's action, except the findings that Al-Attiyah is the chairman and a managing agent of the plaintiff. In the absence of further findings of fact and conclusions of law, this appellate court cannot assess the propriety of that dismissal order. Accordingly, the dismissal order must be vacated and the case remanded to the district court for reconsideration. See, e.g., Gaff v. Federal Deposit Ins. Corp., 828 F.2d 1145, 1151 (6th Cir.1987). Any subsequent order of dismissal should be accompanied by supporting findings of fact, including, but not necessarily limited to, findings of willfulness, bad faith, or other reason for Roots's failure to produce Al-Attiyah for deposition in Nashville which may support the inference that Roots may have engaged in a course of conduct calculated to evade deposition; and the extent to which sanctions short of dismissal (such as commanding the plaintiff to finance a deposition of Al-Attiyah by the defendants at some feasible location outside Qatar, to satisfy the defendants' safety and security concerns arising from the past forcible detention of their representative by the Qatari government after this controversy became adversary,[3] and other options short of dismissal) were considered by the lower court and why such option(s) were rejected. Additionally, the defendants should disclose, and the district court should make findings regarding, the extent to which the defendants may have been prejudiced in the presentation of their defense by their inability to depose Al-Attiyah in Nashville. See Insurance Corp. of Ireland v. Compagnie Des Bauxites, 456 U.S. 694, 707-09, 102 S.Ct. 2099, 2107-08 (1982) (discovery sanctions must be "just" and also must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery.")
 
 
 18
 Accordingly, the district court's dismissal order dated March 29, 1994, and docketed on April 4, 1994, is hereby VACATED. This case is hereby REMANDED to the district court for reconsideration and disposition not inconsistent with this opinion.
 
 
 
 [1]
 The three directors of Roots are Al-Attiyah, Harmoush, and Mohammed Darwish. The record owners of the Qatari "commercial registration" of Roots are Al-Attiyah's two sons, although the three directors had agreed that the profits of the company would be divided among them according to a formula. Prior to 1983, Al-Attiyah received 21.75%, whereas since 1983 he has drawn 25.5%. At all times, Harmoush has been entitled to the largest share, always an amount in excess of 40%. Like Al-Attiyah, Darwish initially resisted efforts to be deposed in Nashville for the same reasons cited by Al-Attiyah (excepting only the contention that official responsibilities precluded a journey to America for personal business reasons, as the record does not reflect that Darwish occupied any Qatari governmental post). Unlike Al-Attiyah, however, Darwish ultimately appeared for deposition in Nashville
 
 
 [2]
 The order at issue in Patton read in its entirety:
 Because of repeated failures of the plaintiffs to obey court orders regarding discovery, this action is hereby DISMISSED. Id. at 607.
 
 
 [3]
 At oral argument, it was revealed that Al-Attiyah had recently traveled to Venezuela in his capacity as OPEC president. Because he apparently travels overseas with some frequency upon official business, and occasionally journeys into the Western Hemisphere, a potential avenue for exploration by the trial court would be the scheduling of Al-Attiyah's deposition in a third country at or near a time when he will be present at that location for official business purposes