## ROOTS CONTRACTING AND TRADING CO.

v.

## CREIGHTON LTD., et al.

No. 3–88–0419.

United States District Court,
M.D. Tennessee,
Nashville District.

Aug. 9, 1996.

---

Gayle I. Malone, Jr., Nashville, TN, Gena E. Cadieux, Barry E. Cohen, Washington, D.C., for plaintiff.

Aubrey Harwell, John Edward Quinn, Micajah Clark Spoden, Thomas Wardlaw Steele, Charles Hampton White, Dianna Baker Shew, Gregory Lee Cashion, Nashville, TN, Harold Edward Creamer, Brentwood, TN, for defendants.

*MEMORANDUM*

CAMPBELL, District Judge.

Pending before the Court is Defendants' renewed Motion To Dismiss this case as a discovery sanction (See Docket No. 405). For the reasons described herein, this case is dismissed, with prejudice, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## BACKGROUND

On March 29, 1994, another Judge of this Court granted Defendants' motion to dismiss as a discovery sanction for failure to obey the Court's October 19, 1993 discovery Order. The dismissal order (Docket No. 379) stated that:

> [t]his Court granted defendants' motion to compel the deposition of Abdullah Al–Attiyah, the Chairman and Managing Agent of Roots Contracting and Trading Company. (Order, October 19, 1993.) Mr. Al–Attiyah did not appear for his deposition in Nashville, Tennessee on December 10, 1993. Plaintiff has failed to obey this Court's order. Accordingly, pursuant to Federal Rule of Civil Procedure 37, the Court DISMISSES this action.

Order (Docket No. 379) at 1. Plaintiff appealed the Order to the Sixth Circuit Court of Appeals, which subsequently remanded this case back to this Court because:

> the district court articulated no findings of fact that supported its order dismissing Root's action, except the findings that Al–Attiyah is the chairman and a managing agent of the plaintiff. In the absence of further findings of fact and conclusions of law, this appellate court cannot assess the propriety of that dismissal order. Accordingly, the dismissal order must be vacated and the case remanded to the district court for reconsideration.

*Roots Contracting & Trading Co. v. Creighton Ltd.,* No. 94–5752, 1995 WL 728145, at 4 (6th Cir. Dec. 7, 1995) (per curiam) (citation omitted).

The Court of Appeals then described the information and findings that must accompany any subsequent dismissal order. These findings must include, but are not limited to:

findings of willfulness, bad faith, or other reason for Roots's failure to produce Al-Attiyah for deposition . . . and the extent to which sanctions short of dismissal . . . were considered by the lower court and why such option(s) were rejected. Additionally, . . . the district court should make findings regarding, the extent to which the defendants may have been prejudiced in the presentation of their defense by their inability to depose Al-Attiyah in Nashville.

*Id.* (footnote and citation omitted).

In accordance with the decision of the Court of Appeals, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In 1982, Roots Contracting and Trading Company ("Roots"), a Qatari corporation, and Creighton Limited ("Creighton"), a Cayman Island corporation headquartered in Nashville, Tennessee, entered into an agreement for the construction of a Qatari hospital. Creighton was the general contractor of the construction project with Roots providing capital, bonding, and "sponsorship." *Roots Contracting & Trading Co.*, 1995 WL 728145, at 1. Such sponsorships are necessary for all foreign businesses operating within Qatar, and all profits from the foreign business must be shared with the domestic sponsor. *Id.*

Construction began in 1983 and difficulties soon followed. Problems included the "Qatari government's delays in funding a promised advance payment and subsequent progress payments." Memorandum and Order of Aug. 25, 1992 (Docket No. 304) at 8. In April 1986, the project was completely halted, the Qatari government fired Creighton and terminated their construction contract. Shortly after the termination, Creighton's president Nabeel Helou was detained in Qatar by government authorities, put in jail temporarily, and had his visa and passport confiscated. Defendants' Joint Reply to Plaintiff's Motion in Opposition (Docket No.

414) at 2. Creighton was reinstated in June, due to the efforts of Mr. Al-Attiyah (a member of the Qatari government and one of the founders of Roots) in dealing with government agencies. Deposition of Robert Harmoush of April 17, 1991 (Docket No. 163) at 245. In November 1986, Creighton was unilaterally removed from the job site by the government. Defendants' Joint Reply (Docket No. 414) at 3.

On May 16, 1988, Roots brought suit in Nashville, in this Court, against Creighton and others for breach of contract and breach of fiduciary obligation, seeking damages, an accounting, injunctive relief, and a dissolution of the partnership. Roots asserted claims of false representation, fraud, and deceit against all parties. Complaint at 9–13 (Docket No. 1); Second Amended Complaint for Injunctive Relief and Damages (Docket No. 167).

Specifically, Roots asserts, *inter alia,* that Creighton attempted to associate its reputation with Foster & Creighton Co., a construction firm with more expertise and resources than Creighton, Limited. Complaint (Docket No. 1). Creighton responded with counterclaims for failure to provide working capital, conspiracy with the government to have the contract terminated, and failure to assist Creighton in arbitration against the Qatari government. Answer and Counterclaim of Defendant (Docket No. 86) at 7–9.[1]

The proceedings in this case continued with discovery and a trial date was scheduled for September 17, 1991. Roots amended its complaint on December 3, 1990, to include four of Creighton's directors and twenty-four Foster & Creighton shareholders and distributees. Second Amended Complaint (Docket No. 101) at 1–3.

Near the end of the discovery period, two defendants, Foster & Creighton and Wilbur F. Creighton III, noticed the depositions of Abdullah Al-Attiyah, Robert Harmoush, and Mohammed Darwish, all allegedly "Directors or Managing Agents of [Roots]." Notice of

1. Defendants assert that in May of 1987, Creighton sought arbitration in the International Chamber of Commerce, pursuant to its agreement with the Qatari government. Roots refused to participate. Creighton won two awards against the government, and Qatar's counterclaims were dismissed. The arbitration decision was recently upheld on appeal in the Cour d'Appel in Paris. Defendants' Joint Reply (Docket No. 414) at 3.

Feb. 19, 1991 to Take Depositions (Docket No. 111, Exhibit A) at 2. Roots then filed several motions for protective order, all of which were ultimately denied by the Court. (See Orders dated March 20, 1991 (Docket No. 115), September 25, 1991 (Docket No. 179), and October 2, 1991 (Docket No. 186)). The October 2, 1991 Order denying the Motion for a Protective Order included the following: "it is further ORDERED that Roots Contracting and Trading Company shall be required, at its expense, to cause Abdullah Al–Attiyah and Mohammed Darwish to come to Nashville, Tennessee, to give their oral depositions ..." Order of October 2, 1991 (Docket No. 186) at 1–2. After several delays, Mr. Harmoush and Mr. Darwish both appeared and were deposed in Nashville in December, 1991. Mr. Al–Attiyah, however, failed to obey the court order and did not appear for his deposition. A subsequent motion by Defendants for dismissal as a sanction under Rule 37 of the Federal Rules of Civil Procedure was denied by the Court. The Court agreed with the Magistrate Judge who found no bad faith on the part of Roots. Order of August 25, 1992 (Docket No. 304). At that time, Roots contended that Mr. Al–Attiyah was not permitted to come to the United States due to his position in the Qatari government. Memorandum in Support of Order of August 25, 1992 at 22–23 (Docket No. 303).[2] As a sanction short of dismissal, the August 25, 1996 Order barred Roots from introducing Mr. Al–Attiyah's testimony and monetary sanctions were instead imposed on Roots to compensate Defendants for their sanction-preparation costs.

In August of 1993, Defendants moved to reopen the discovery period, to lift the sanction against Roots' use of Al–Attiyah's testimony, and requested an order compelling Mr. Al–Attiyah to appear in Nashville for deposition. Motion to Compel Discovery and For Other Relief (Docket No. 344). This Court granted the Motion to compel Mr. Al–Attiyah's testimony in Nashville. Order of October 20, 1993 (Docket No. 362). The Court stated: "if Mr. Al–Attiyah, the Chairman of the Board of Roots Contracting and Trading Company, refuses to submit to this Court's order and appear at the deposition, this Court *will consider dismissing this case.*" *Id.* at 2. (Emphasis added.) Defendants noticed their intention to depose Mr. Al–Attiyah in November, 1993, in Nashville. The deposition was rescheduled for December 10, 1993, in Nashville. (Docket No. 365, Exhibit A).

Roots filed yet another motion for a protective order on December 7, 1993, and contacted Mr. Steele (counsel for the Defendants) to inform him of Mr. Al–Attiyah's alleged unavailability. Motion for Protective Order (Docket No. 364). Mr. Al–Attiyah did not attend the scheduled deposition. In January of 1994, Defendants again filed for dismissal of this case as a discovery sanction. Motion by Defendants to Impose Sanctions and To Dismiss (Docket No. 367). In response, Roots offered a statement from Mr. Al–Attiyah informing the Court that "[r]egrettably, for the reasons I have mentioned, I cannot undertake such travel." Declaration of Abdullah Hamad Al–Attiyah (Docket No. 376) ¶ 20.

The Court granted Defendants' Motion on April 4, 1994, and dismissed the case. Order of April 4, 1994 (Docket No. 379). The Court of Appeals for the Sixth Circuit vacated the order on December 7, 1995, and remanded the case to this Court for reconsideration.

After this case was remanded, it was transferred administratively to this Judge on March 29, 1996. (Docket No. 400). The case has now been pending nearly eight years.

## CONCLUSIONS OF LAW

*Willfulness and Bad Faith*

A district court may sanction parties who fail to comply with discovery orders in a variety of ways, including dismissal of the action. See Fed.R.Civ.P. 37(b)(2)(c). The Supreme Court, in *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers* ("Societe Internatio-

---

**2.** At that time, Mr. Al–Attiyah held a position with the Ministry of Interior. He is presently the Qatari Minister of Energy and Petroleum and the President of the Organization of Petroleum Exporting Countries (OPEC).

160

nale"), 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), commented that:

> ... Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of the petitioner.

*Id.* at 212, 78 S.Ct. at 1096.

A district court's dismissal under Rule 37 is subject to an abuse of discretion standard. *Regional Refuse Sys. v. Inland Reclamation Co.,* 842 F.2d 150, 154 (6th Cir. 1988). "Simply put, 'if a party has the ability to comply with a discovery order and does not, dismissal ... is not an abuse of discretion.'" *Bank One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1073 (6th Cir.1990) (quoting *Regional Refuse,* 842 F.2d at 154).

An examination of inability versus bad faith may take into account many factors. For instance, in *Abbe,* the Court of Appeals for the Sixth Circuit reversed a default judgment order because the parties' refusals to answer discovery questions were based on Fifth Amendment privileges. *Abbe,* 916 F.2d at 1078. The Court of Appeals held that, since the parties were asserting proper constitutionally-based privileges, the sanction was inappropriate. *Id.*

Another factor to be considered before dismissing an action is that the parties are adequately warned of impending dismissal. "[W]here a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such 'callous disregard' of discovery orders justifies dismissal." *Bass v. Jostens, Inc.,* 71 F.3d 237, 242 (6th Cir.1995) (quoting *Thomas v. Victoria's Secret Stores,* 141 F.R.D. 456, 458–59 (S.D.Ohio 1992)); see also *Moore v. Hedge,* No. 95–5919, 1996 WL 109465, at 2 (6th Cir., March 11, 1996) ("pre-dismissal warning for failure to comply with district court's orders is pivotal to the determination of willfulness").

Additional considerations apply when the party refusing the order is a corporation.

The Supreme Court has ruled that an officer of a corporation has the responsibility to act within the limits of his power to bring about compliance with a court order directed to the corporation. *United States v. Fleischman,* 339 U.S. 349, 357, 70 S.Ct. 739, 743, 94 L.Ed. 906 (1950).

"The failure to respond to a court order, without justification, after being fully informed of the obligation to respond and the penalties for non-compliance can be deemed to be willful misconduct." *Thomas v. Victoria's Secret Stores,* 141 F.R.D. at 459.

As Roots has pointed out in its Plaintiff's Opposition to Defendant's Renewed Motion for Dismissal as a Discovery Sanction (Docket No. 413), certain discovery between the parties initially occurred without undue difficulty in light of the complexities of the case. *Id.* at 9–11. Messrs. Harmoush and Darwish also eventually appeared at their depositions. The Court acknowledges that, at the time of the initial scheduling, travel from Qatar to the United States was arguably burdensome and potentially dangerous due to the Persian Gulf War. In light of these circumstances, this Court was correct in denying Defendants' initial Motion for Dismissal as a Sanction, Order of August 25, 1992 (Docket No. 304), as the attending circumstances supported a finding of no bad faith on the part of Roots.

These circumstances, however, did not persist for the next two years and do not now exist. Roots' counsel points to the fact that they have tried to persuade Mr. Al–Attiyah to attend a deposition. Counsel then assumes that since they have tried, there cannot be bad faith on Roots' part. Plaintiff's Opposition (Docket No. 413) at 15–16. Counsel confuses its role with the role of its client. It is Roots which must produce Mr. Al–Attiyah, not counsel. Roots, as a corporation, acts through its directors and managing agents, including Mr. Al–Attiyah. By its very nature, a corporation can only act through its agents. *Rural Educational Ass'n v. Bush,* 42 Tenn.App. 34, 298 S.W.2d 761, 769 (1956). The act of an authorized administrative officer of a corporation on behalf of the corporation is an act of the corpo-

ration. *Haverty Furniture Co. v. Foust,* 174 Tenn. 203, 124 S.W.2d 694, 698 (1939). Mr. Al–Attiyah, an authorized administrative officer of the corporation, indeed reportedly the only person who could legally bind Roots,[3] chose to not obey this Court's order. It is true that other officers of Roots, most noticeably Mr. Harmoush, attempted to persuade Mr. Al–Attiyah to attend the deposition. However, the corporation's internal difficulties are not the determinative issue before this Court. Mr. Al–Attiyah, as acknowledged by the Court of Appeals, is Roots' Chairman of the Board and Managing Agent. *Roots Contracting,* 1995 WL 728145, at 1. Consequently, it is Roots which is refusing to appear at a deposition in Nashville, Tennessee, for its own suit.

■ Indeed, the Court finds that Mr. Al–Attiyah's connection to Roots is profound and compelling. Roots and Mr. Al–Attiyah are one and the same. As decided by the Court of Appeals, "affidavits proffered . . . support the inference that Al–Attiyah was a policy maker and an operational factor in the plaintiff limited liability company." *Id.* at 2. "The three directors of Roots are Al–Attiyah, Harmoush, and Mohammed Darwish." *Id.* at 1, n. 1.

This Court also notes that although Mr. Al–Attiyah's two sons are the registered owners of Roots, Mr. Al–Attiyah remains legally responsible due to the boys not having reached the age of majority. Declaration of Abdullah Hamad Al–Attiyah (Docket No. 376) ¶ 1, Deposition of Robert Harmoush (Docket No. 163) at 10. Mr. Harmoush identified Mr. Al–Attiyah as a member of Roots' management committee and labeled him as "basically the chairman of the board of Roots/Creighton." Deposition of Robert Harmoush (Docket No. 163) at 107. Further, as "managing director," only Mr. Al–Attiyah could legally commit Roots to agreements. Telex of May 4, 1987 (Docket No. 152, Exhibit F) at 1.

Mr. Al–Attiyah was fundamental in obtaining financial support from the Qatar National Bank[4] and in dealing with governmental problems ranging from disputes with the Tender Committee to insulation for the heating and air conditioning ducts. See Affidavit of Nabeel Helou of Jan. 7, 1994 (Docket No. 369). Mr. Helou further stated that during his visits to Qatar to oversee construction, he "made a practice of personally visiting and conferring with Mr. Al–Attiyah on at least a weekly basis, to make him fully aware of all the details concerning the performance of the contract." *Id.* at 4. After Creighton was dismissed from the project, Al–Attiyah's intervention with the Ministry of Public Works led to Creighton's reinstatement. Deposition of Robert Harmoush of April 17, 1991 (Docket No. 163) at 245.

In light of the affidavits offered, Mr. Al–Attiyah's crucial role in Roots is apparent. The Court finds that Mr. Al–Attiyah is a managing agent of Roots.

The Court further finds that Roots' efforts to distance itself from Mr. Al–Attiyah are unpersuasive, factually in error, and legally incorrect. Roots and Mr. Al–Attiyah are as one with each other.

■ Despite the orders from this Court, Mr. Al–Attiyah has refused to appear for a deposition in Nashville. Counsel for Roots, states that "[t]hese responsibilities (as President of OPEC), I am advised, preclude his travel." Letter (Docket No. 367, Exhibit B) at 1. Similar hardship excuses have been offered in support of various motions for protective orders, all of which were denied by the Court. See Orders dated March 20, 1991 (Docket No. 115), September 25, 1991 (Docket No. 179), and October 2, 1991 (Docket No. 186). Mr. Al–Attiyah's refusal to be deposed in Nashville has also been attributed to "a very busy official schedule and prior commitments. . . ." Letter from Hassan Ali Alsaad to Robert Harmoush (Docket No. 371, Exhibit C).

**3.** See Telex of May 4, 1987 (Docket No. 152, Exhibit F) at 1.

**4.** Mr. Al–Attiyah's signature was required on every crucial document concerning the joint venture, including a commercial loan between Creighton and the Qatar National Bank and the Joint Guaranty Agreement, where Mr. Al–Attiyah was "individually, jointly and personally" liable for the loan. Joint Guaranty Agreement (Docket No. 102, Exhibit C, Exhibit 3) at 1.

To the contrary, the Court finds that Mr. Al–Attiyah's travel has not been greatly curtailed in recent years. During the past several years, Mr. Al–Attiyah has traveled extensively, visiting countries including Iran, Oman, Switzerland, Norway, Finland, Austria, and Venezuela.

Mr. Al–Attiyah was informed on several occasions of his obligation to respond, yet directed his attention to other priorities. Roots was warned that failure to comply with the Court's Order might result in dismissal. Order of October 20, 1993 (Docket No. 362). This pre-dismissal warning and the subsequent flagrant disregard of the Court's Order establish willfulness on the part of Roots.

▮▮ The Court also takes note of the fact that Roots chose Nashville as the forum for their action against Creighton. Having done this, Roots' corporate directors then repeatedly insisted that their coming to the forum of their own action is an undue hardship. In essence, Plaintiff Roots is arguing against conditions that it created.

The Court finds that Mr. Al–Attiyah's refusal to obey this Court's order is due to his own choices, not an inability on his part. The facts of this case do not constitute "inability" under the terms of *Societe Internationale*, 357 U.S. at 211–12, 78 S.Ct. at 1095–96. See also *Thomas*, 141 F.R.D. at 460. Accordingly, the Court finds that Roots, through its director and managing agent, Mr. Al–Attiyah, acted in bad faith and willfully in refusing to obey this Court's Order.

### Alternative Sanctions

During the course of this case's proceedings, discovery sanctions have been requested, threatened, and imposed, all to varying degrees of success. The Court of Appeals for the Sixth Circuit addressed the possibility of lesser sanctions preceding a dismissal:

> While it would be inappropriate to dismiss without considering the severity of this sanction and the availability of lesser sanctions, it is not an abuse of discretion to dismiss, even though other sanctions might be workable, if dismissal is supportable on the facts. Dismissal is generally imposed only for egregious misconduct, such as *repeated* failure to appear for deposition.

*Regional Refuse Systems v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir.1988) (emphasis in original). This Court finds that, not only do the facts support dismissal as a discovery sanction, but also that lesser sanctions were first attempted, only to prove inadequate.

The Sixth Circuit has held that lesser discovery sanctions that fail to adequately address a problem may give rise to harsher sanctions:

> By setting aside the court's judgment, however, we do not mean to approve of any of the machinations undertaken to this point in the proceedings. In fact, we admonish the parties that further discovery abuses will be judged not on a clean slate, but in light of all prior abuses that already have occurred. Our decision to vacate, therefore, should not preclude the district court from considering whether lesser sanctions still should be imposed, or from reconsidering, in the event of subsequent abuses, whether a default judgment may yet be warranted.

*General Environmental Science Corp. v. Horsfall*, No. 90–01340, 1994 WL 228256, at 11 (6th Cir. May 25, 1994). The Court takes note that lesser sanctions have already been attempted in this case. Such sanctions, however, proved ineffective and their results seriously hindered the Defendants. Therefore, the Court finds that reconsideration of the sanctions was necessary, and dismissal is now appropriate.

▮▮ As described above, the Court has previously granted sanctions preventing Roots from using Mr. Al–Attiyah's statements as evidence in its favor. Order of August 25, 1992 (Docket No. 304). The Court, on motion from the Defendants, later removed this sanction in an effort to allow Defendants to secure Mr. Al–Attiyah's testimony for their case. Order of October 20, 1993 (Docket No. 362). Mere preclusion of Mr. Al–Attiyah's testimony was an ineffective sanction, since it failed to produce him for deposition. Mr. Al–Attiyah's testimony is fundamental to Creighton's defenses because of his positions with Roots and the Qatari government. As much of the conflict with

the construction project stemmed from governmental difficulties, Mr. Al–Attiyah's importance is clear and his presence is crucial.

This Court finds that the deposition of Mr. Al–Attiyah is crucial to Creighton's defenses. Lesser sanctions were attempted, but were later found to be insufficient. As one of the central figures in this case, no other sanction can adequately adjust for Roots' failure to abide by this Court's Order. Mr. Al–Attiyah, in self-fulfillment of the *Regional Refuse* wording, has repeatedly failed to appear for deposition, despite warnings of dismissal. Accordingly, dismissal is an appropriate sanction.

*Prejudicial Extent of Mr. Al–Attiyah's Absence*

This Court can best describe Defendants' need for Mr. Al–Attiyah's testimony in the words of the Sixth Circuit Court of Appeals:

> [C]ertain affidavits proffered and allegations advanced by the defendants support the inference that Al–Attiyah was a policy maker and an operational factor in the plaintiff limited liability company. Accordingly, the defendants should be permitted to examine him personally to determine the scope of his role and authority within the plaintiff company, and his knowledge of the transactions at issue, rather than being compelled to rely upon hearsay recitations of other witnesses regarding his relationship with the plaintiff company.

*Roots Contracting & Trading Co. v. Creighton Ltd.,* No. 94–5752, 1995 WL 728145, at 2 (6th Cir. Dec. 7, 1995) (per curiam). This Court is bound by this holding and, in any event, agrees. Defendants must have the ability to personally question Mr. Al–Attiyah in order to fully explore their defense.

 The prejudice created by Mr. Al–Attiyah's absence is a result of his materiali-

ty. This Court, having found that Mr. Al–Attiyah played a large role in the plaintiff company, also finds that Defendants are prejudiced by his refusal to be deposed.

Roots concedes that testimony between the various witnesses is contradictory and confusing. Supplement to Plaintiff's Response (Docket No. 375). The Court notes that Mr. Harmoush has changed his categorization of Mr. Al–Attiyah from "basically the chairman of the board of Roots/Creighton," Deposition of Robert Harmoush (Docket No. 163) at 107, to "never [having] any involvement in any of the business affairs of Roots." Second Declaration of Robert Harmoush (Docket No. 261, Exhibit 3) at 1. This Court finds that Mr. Al–Attiyah's testimony is vital to the clarification of these and other issues.[5] Without Mr. Al–Attiyah's testimony, Defendants remain in the dark concerning the decisional operations of Roots. The prejudice is apparent when it is the plaintiff of the case that refuses to cooperate, and the defendant must raise defenses and counterclaims based on incomplete and vital information. Accordingly, this Court finds that Roots' refusal to comply with the Court's Order and have Mr. Al–Attiyah appear at his deposition has significantly prejudiced the Defendants to the extent that dismissal is not only warranted, but required.

As a further note, the Court recognizes the time and resources that have been expended in attempting to secure Mr. Al–Attiyah's deposition. Nearly eight years have passed since this case was originally filed. Roots has asked this Court to postpone this trial six times (Docket Nos. 92, 107, 143, 185, 223, 271). While not sufficient in and of itself, this delay supplements the Court's determination that Defendants have been prejudiced by Roots' failure to abide by this Court's Order.

---

5. Defendants point to several other issues that must be resolved by Mr. Al–Attiyah's testimony. Specifically, Defendants claim that "[a]s a founding director of Roots, Mr. Al–Attiyah can testify as to how Mr. Harmoush first presented the proposed agreement between Roots and Creighton; was the Foster and Creighton Company ever mentioned; ... what factors did Mr. Harmoush cite to convince Mr. Al–Attiyah that he

should enter into a joint venture with Creighton?" Proposed Order at 19. Defendants also submit that Mr. Al–Attiyah's knowledge of Creighton's inability would impute on Roots and commence the running of the statute of limitations. *Id.* at 20.

As found by the Court of Appeals, Defendants should have the opportunity to personally pose these and other questions to Mr. Al–Attiyah.

**164**

*Post-Remand Activities*

██ Since the remand of this case, Roots has made certain vague, indefinite, contingent and ill-timed offers to produce Mr. Al-Attiyah for depositions in Europe or in the United States in locations other than in Nashville, Tennessee. Defendants' Joint Reply To Plaintiff's Motion In Opposition To Dismissal As A Discovery Sanction (Docket No. 414, pp. 13–16); and Plaintiff's Opposition To Defendants' Renewed Motion For Dismissal As A Discovery Sanction (Docket No. 413, pp. 22–24). These deposition offers appear to be more a litigation strategy designed to create an issue for another appeal, or a calculated effort to evade discovery, than a good faith effort to produce Mr. Al-Attiyah for a deposition. No offers have been made by Roots for Mr. Al-Attiyah to come to Nashville for a deposition on a date certain.

The Court finds that even if these latest offers were in good faith, which the Court earnestly doubts, they are too little, too late. The Court further finds that such offers, even if legitimate, an opinion that the Court does not hold, still do not comply with the original Order requiring Mr. Al-Attiyah to give his deposition in Nashville, Tennessee.

The Court agrees with the prior Order of this Court that the deposition of Mr. Al-Attiyah must be taken in Nashville, Tennessee, not Europe or elsewhere in the United States. These multiple Defendants, and their multiple attorneys, cannot fairly be required to travel to Europe or elsewhere in the United States for the benefit of Mr. Al-Attiyah's convenience. This applies even if Roots pays Defendants' travel expenses. The Defendants, and their lawyers, would unfairly and prejudicially incur wasted time, increased legal fees, lost opportunities and substantial inconvenience. In that regard, it should be remembered that Roots is the plaintiff in this case and that it filed this case in Nashville, Tennessee, not elsewhere.

Given the record in this case, for the reasons described in full above, this Court finds that the only appropriate sanction at this point is dismissal of this case with prejudice.

PLAINTIFF'S MOTION FOR LEAVE TO FILE FURTHER OPPOSITION

The Court GRANTS Plaintiff's Motion for Leave to File Further Opposition to Defendants' Motion for Dismissal as a Discovery Sanction (Docket No. 415). The Court considered the issues outlined in Plaintiff's Motion, but finds them unpersuasive.

CONCLUSION

For the reasons set out above, this case is dismissed, with prejudice, pursuant to rule 37 of the Federal Rules of Civil Procedure.

It is so ORDERED.